# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>Steven C. Wallwork,<br><br>Debtor. | Bankruptcy Case<br>No. 19-40124-JMM |

## MEMORANDUM OF DECISION

**Appearances:**

>Thomas D. Smith, SPINNER, WOOD & SMITH, Pocatello, Idaho, Attorney for chapter 7 trustee.

>Aaron J. Tolson, TOLSON & WAYMENT, PLLC, Ammon, Idaho, Attorney for Debtor.

### *Introduction*

Before the Court are two objections to the homestead exemptions claimed by debtor Steven C. Wallwork ("Debtor"), Dkt. Nos. 19 and 31.  The objections were filed by the chapter 7[1] trustee R. Sam Hopkins ("Trustee").  The Court conducted an evidentiary hearing on November 13, 2019, after which the parties requested the opportunity to file closing briefs.  Following the completion of the briefing, *see* Dkt. Nos.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

MEMORANDUM OF DECISION − 1

57–59, the objections were deemed under advisement.  The Court has now considered the briefs, exhibits, and testimony presented, as well as the applicable law, and issues the following decision which resolves the two objections.  Fed. R. Bankr. P. 7052; 9014.

### *Facts*

During their forty years of marriage, Debtor and his non-filing spouse, Robyn, have moved quite often.  For the purposes of this decision, however, the Court will concern itself with only the last approximately seven years.  In August/September 2012, Debtor and Robyn moved to Maryland.  They did not purchase any real property, but instead rented an apartment or lived with their son and his wife who needed help with a special needs child.  The point of moving to Maryland, in addition to assisting their son, was to enable Robyn to attend college.  Specifically, she sought a degree in early childhood development with an associated entrepreneurial program.  Robyn's intention was to open a daycare with a performing arts component, as she had run dance programs for children in other states in which she had resided.  It was never their intention to remain in Maryland long-term, but rather to move to Idaho and start the business with the help of their daughter who resided near Idaho Falls.

While in Maryland, Debtor and Robyn filed tax returns as part-year residents in 2012, and as full-year Maryland residents in 2013–2016, part-year in Idaho in 2017, and as full year Idaho residents in 2018.  Exs. 209–211.  Debtor testified that he and Robyn registered vehicles in Maryland during their time there, as well as registered to vote.  Furthermore, they both worked while in Maryland.  Finally, their practice was to change

MEMORANDUM OF DECISION − 2

their driver's licenses whenever the one they held expired, and as a result, Debtor held a Maryland driver's license during his tenure in that state, as well as after relocating to Idaho, including on the day of the hearing.

The couple began to prepare for their move to Idaho as Robyn approached graduation.  Given their plan to operate a daycare with a performing arts component, they needed both classroom and studio space.  In 2016, they found an older home in Idaho Falls with a large shop they could convert to the daycare.  On September 16, 2016, Debtor and Robyn entered into a real estate purchase and sale agreement on the home on Lincoln Drive in Idaho Falls, and put down earnest money to support the agreement.  Ex. 101.  They also applied for a residential loan in both of their names.  Ex. 102.  They intended to have a "hybrid" loan that was part construction loan, and part residential home mortgage.  The bulk of the construction was to convert the outbuilding to a performance studio.  In order for the construction loan to close, they had to have an architect come out and examine the lot and existing outbuilding, and they had to have bids for the construction.  Ex. 103.  The general contractor they chose was Royal Crown Construction.  They gave its principal, Ruben Corona, nearly $10,000.

After the loan was approved, in approximately September of 2016, the couple moved some furniture to Idaho, some of which they put in a storage unit and some they stored at their daughter's home.  Unfortunately, the Lincoln Drive sale fell through after the property failed to appraise at a high enough value to support the loan, and the seller refused to renegotiate.

MEMORANDUM OF DECISION – 3

Following that setback, Debtor and Robyn began to look for another home to purchase and their realtor found a suitable lot located at 132 W. 14th St., Idaho Falls, Idaho ("14th Street").  On January 13, 2017, they entered into a contract to purchase the lot, Ex. 104, and on February 23, 2017, Debtor applied for a construction loan with Mountain America Credit Union ("Mtn. America") in his name only to fund the construction of a home and an outbuilding to house the performing arts studio, Ex. 107. Debtor testified the loan was in his name only, because to obtain a construction loan, the borrower must qualify both at the time of the application, and also at the end when construction is completed, and Robyn would be in school and have no income for one of the qualification periods, so they opted to leave her off the loan application.  The loan amount was $202,500.  Ex. 203.

They continued to use Royal Crown Construction, and Mr. Corona as their general contractor, on the 14th Street property.  This proved to be a costly choice.  The plan, such as it was, went as follows:  Mr. Corona allegedly projected the construction costs high so that there would be surplus funds to pay for most of the outbuilding.  Debtor and Robyn would use that surplus, plus some funds of their own, along with a commercial loan, to fund the remainder of the outbuilding.  However, it was later discovered that Mr. Corona had not designed the outbuilding in such a way that it complied with the Americans with Disabilities Act, and because it was a commercial building, it therefore had to be redesigned, resulting in a price increase from $40,000 to $67,000.  Mr. Corona produced a rough set of plans, Ex. 105, but almost immediately began missing deadlines, meetings,

MEMORANDUM OF DECISION − 4

and calls.  Debtor later learned that he had no contractor's license and had filed a false

certificate of insurance with the mortgage company.  Mr. Corona abandoned the project,

taking the subcontractors and the $10,000 with him.  Debtor reported Mr. Corona's and

Royal Crown's conduct, and an investigation was opened with the Bureau of

Occupational Licensing, but nothing has come of it thus far.

To complete the construction, Robyn moved to Idaho in May or June 2017 and

stepped in as the general contractor, lined up new subcontractors, and, using the funds

from the construction loan, finished the house.  They were forthright with Mtn. America

about the issues with their contractor as well as the cost increases, and there was talk

about ultimately using a home equity loan to fund the construction of the outbuilding.

There was a six-month waiting period, however, before they could apply for a home

equity line of credit, and in the meantime, Debtor obtained balance transfers from his

personal credit cards, deposited them in his Mtn. America account, and used the funds to

pay subcontractors so the construction could be finished.  Exs. 204, 205, 208, and 213.

He also used the balance transfers to make payments to Mtn. America.  He made

minimum payments on the credit cards after the promotional rates on the balance

transfers began to expire.  Ex. 213.

In mid-October 2017, Debtor began his trek from Maryland to Idaho, as is

documented in his credit card statement for that time period, which shows a series of gas,

food, and hotel charges in cities beginning in the East and moving progressively

MEMORANDUM OF DECISION – 5

westward until he reached Idaho Falls. Ex. 204. By November 2017, Debtor and Robyn had both of their vehicles registered in Idaho.

The home and studio were eventually finished, and Debtor and Robyn moved in by late May 2018, after which Robyn attempted to start her business. Ex. 214, Creditor Mtg. Tr., at p. 6. It was slow going at first, with revenues coming in lower than projected. As such, in November 2018, when the six-month waiting period was up, Debtor applied for a home equity line of credit, but was denied because the bank found they did not qualify because the business was not meeting the expectations described in their business plan.

On February 14, 2019, Debtor filed a chapter 7 petition. Dkt. No. 1. On the petition, he listed the 14th Street property as his home address. *Id.* On schedule A, Debtor listed the 14th Street property as an asset, and on schedule C he claimed it exempt under Idaho Code § 55-1113 in the full amount of the exemption permitted by law, $100,000. *Id.* Debtor owes Mtn. America approximately $201,000 on the loan for construction of the home and outbuilding on the 14th Street property, Ex. 207. He listed one secured debt against that property, and noted that his non-debtor spouse, Robyn Wallwork, is a co-debtor on that secured debt. Dkt. No. 1. He listed $96,961 in unsecured non-priority debt, of which Debtor believes approximately $87,000 is credit card debt that was incurred on the construction of the home and outbuilding at the 14th Street address. He testified that $67,000 of the debt went toward construction of the outbuilding, $10,000 was spent constructing the home, and $10,000 went to their original

MEMORANDUM OF DECISION − 6

general contractor.  The other $10,000 in credit card debt is Debtor and his spouse's

personal expenses.[2]

On his Statement of Financial Affairs, Debtor listed two prior places he had lived

within the three years preceding the bankruptcy filing.  He listed an address in Idaho

Falls, Idaho, on Malory Dr. from June 2017–May 2018.  Dkt. No. 1.  Before that, he

listed an address on Autumn Chase Dr. in Annapolis, Maryland from April 2017–June

2017.  *Id.*

On April 12, 2019, Trustee filed an objection to Debtor's claim of exemption in

the 14th Street homestead, arguing that Debtor was claiming an exemption in non-exempt

funds under § 522(o).  Dkt. No. 19.  He later filed an amended objection to claim of

exemption, which the Court reads as a supplemental objection. Dkt. No. 31.  In that

filing, Trustee objects to Debtor's claim of a homestead exemption under Idaho law,

arguing that Debtor must claim Maryland exemptions.

Debtor responded to the first objection, Dkt. No. 20, and both objections were set

for hearing.  The Court conducted an evidentiary hearing on November 13, 2019, after

which the Court permitted supplemental briefing.  Dkt. No. 56.  Following the

---

[2] Upon examination of the schedules, the Court's calculations are somewhat different in that $75,961 appears to be the amount of the credit card debt.  Debtor listed unsecured, nonpriority debt on schedule E/F totaling $96,961, but acknowledged in his testimony that $15,000 of the debt is student loan debt which was not indicated as such on the schedules.  *See also* Creditor Mtg. Tr., Ex. 214 at p. 7.  However, for the purposes of the Court's decision here, exact figures are not necessary.

MEMORANDUM OF DECISION – 7

submission of the briefs, Dkt. Nos. 57–59, the Court deemed the matter under advisement.

### *Analysis and Disposition*

Trustee objects to Debtor's claim of a homestead exemption under Idaho Code § 55-1113, first on the grounds that, under the domiciliary scheme found in § 522(b)(3)(A), Debtor is not entitled to claim exemptions under Idaho law, but instead must claim Maryland exemptions.  Next, Trustee contends that § 522(o) requires the Court to reduce Debtor's homestead exemption because he used the credit card cash advances to increase his exempt equity.  The Court will consider each argument in turn.

### A.  Objection as to Domicile under § 522(b)(3)(A)

#### *1. Exemption Law, Generally*

Section 522(b)(1) allows individual debtors to exempt assets included in property of the bankruptcy estate, and to thereby shield them from liquidation by a chapter 7 trustee.  Both federal and state exemption schemes exist.  In § 522(b)(3), the Code permits a state to "opt out" of the federal exemption scheme in favor of its own, and Idaho has chosen to do so.  Idaho Code § 11–609.  Thus, in most instances, debtors residing in this State may claim Idaho exemptions when they file for bankruptcy relief.

 The question of which exemptions to apply, however, becomes more complex when debtors have lived in different states prior to filing their bankruptcy petition.  In that instance, the Code provides a somewhat complicated approach to determining which exemptions they may claim.  The Code provides that debtors may exempt:

MEMORANDUM OF DECISION − 8

> [A]ny property that is exempt under Federal law, other than subsection (d)
> of this section, or [under] State or local law that is applicable on the date of
> the filing of the petition to the place in which the debtor's domicile has been
> located for the 730 days immediately preceding the date of the filing of the
> petition or if the debtor's domicile has not been located in a single State for
> such 730-day period, the place in which the debtor's domicile was located
> for 180 days immediately preceding the 730-day period or for a longer
> portion of such 180-day period than in any other place[.]

§ 522(b)(3)(A). Put another way, to determine which exemption scheme applies, the

parties and Court must first identify a debtor's domicile during the 730 days preceding the

filing of the petition. If the debtor has been domiciled in the same State for those 730

days, then that State's exemption laws apply. On the other hand, if the debtor was

domiciled in more than one State during the 730-day period, then the Court must identify

where the debtor was domiciled during the 180 days preceding the 730-day period, or the

longer portion of that 180 days, and apply the exemption laws of that State in debtor's

bankruptcy case. *In re Rodenbough*, 579 B.R. 545, 548–49 (Bankr. D. Idaho 2018).

Here, Trustee contends that Debtor's historical domicile requires that Maryland

exemption law apply to this bankruptcy case. As the objecting party, Trustee bears the

burden of showing that Debtors' claim of exemption is improper. Rule 4003(c); *Carter v.

Anderson (In re Carter)*, 182 F.3d 1027, 1029 n.3 (9th Cir. 1999); *In re Cerchione*, 398

B.R. 699, 703 (Bankr. D. Idaho 2009), *aff'd,* 398 B.R. 699 (9th Cir. BAP 2009)  If the

trustee offers sufficient evidence to rebut the prima facie validity of the exemption, the

burden then shifts to Debtor to demonstrate the claimed exemption is proper. *In re

Haworth*, 604 B.R. 394, 396 (Bankr. D. Idaho 2019) (citing *In re Hall*, 464 B.R. 896, 903

MEMORANDUM OF DECISION − 9

(Bankr. D. Idaho 2012)).  The validity of the claimed exemption is determined as of the

date of filing of the bankruptcy petition.  § 522(b)(3)(A); *Culver, L.L.C. v. Chiu (In re*

*Chiu),* 266 B.R. 743, 751 (9th Cir. BAP 2001); *In re Cerchione*, 398 B.R. at 702–03.  The

homestead exemption statutes are to be liberally construed in favor of the debtor. *In re*

*Moore,* 349 B.R. 44, 46 (Bankr. D. Idaho 2005); *In re Steinmetz,* 261 B.R. 32, 33 (Bankr.

D. Idaho 2001).

### 2. *Discussion*

#### a.  Domicile

The text of § 522(b)(3)(A) refers to a Debtor's "domicile," and as such, the Court

must determine where Debtor was domiciled during the relevant time periods.  It is

important to note the concepts of "residence" and "domicile" are not interchangeable.  As

this Court[3] observed in *In re Capps*,

> A debtor's residence may be distinct from her domicile.  *In re Halpin,* 94
> I.B.C.R. 197, 197 (Bankr. D. Idaho 1994). "Domicile" requires an "intent
> to remain" at a location.  *Id.*  "Residence, by contrast, may refer to living in
> a particular locality without the intent to make it a fixed and permanent
> home." *Id.*  (citing BLACK'S LAW DICTIONARY 1176 (6th ed. 1990)).
> Though a person may have only one domicile, she may have several

---

[3] In prior cases, this Court has applied a state law definition of "domicile," and will do so again here.
There is some debate about whether the definition of "domicile" supplied by federal common law or state
law should be employed.  *See Farm Credit Bank of Wichita v. Hodgson (In re Hodgson)*, 167 B.R. 945,
949-50 (D. Kansas 1994) ("Although we believe that federal common law should control because the
bankruptcy statutes have uniform nationwide application, and application of the law of the states might
produce a lack of uniformity, we also recognize that the federal bankruptcy system relies heavily on state
law.").  However, like the court in *Hodgson*, this Court also finds the issue to be largely immaterial,
because the definitions under the federal common law, Idaho state law, and Maryland state law, are very
similar.

MEMORANDUM OF DECISION − 10

residences. *Id.* (citing *Williamson v. Osenton,* 232 U.S. 619, 625, 34 S.Ct. 442, 58 L.Ed. 758 (1914)).

438 B.R. 668, 674 (Bankr. D. Idaho 2010). Because a debtor's domicile determines access to exemptions, the Court must consider where Debtor was domiciled, as opposed to where he resided.

In Idaho, "domicile" is a "physical presence in a place in connection with a certain state of mind concerning one's intent to stay there." *In re Andrews*, 225 B.R. 485, 487 (Bankr. D. Idaho 1998) (quoting *In re Halpin,* 94 I.B.C.R. at 197). In this case, the evidence indicates Debtor lived in Idaho Falls when he filed his bankruptcy petition in February 2019. On the Statement of Financial Affairs, he indicated that he lived in Idaho Falls from June 2017 to the present, and the evidence shows that he moved from Maryland to Idaho in October 2017. Thus, in February 2019, Debtor was an Idaho resident. Prior to that time, from late summer 2012 until October 2017, Debtor lived in Maryland. Debtors contend that while they resided in Maryland, their domicile was in Idaho, and thus Idaho exemption law applies.

The Court finds that Debtor was domiciled in Idaho beginning in October 2017. At that time, he clearly met the definition of a domiciliary, as he had established both a physical presence in Idaho Falls as well as an intent to stay there. He filed taxes as a part-year resident in 2017, and registered vehicles in Idaho as of November 2017. The same cannot be said for any period prior to that time, as he had never resided in Idaho

MEMORANDUM OF DECISION − 11

before then, and had only a plan to eventually move there someday and establish a

business.  That simply does not amount to domicile.

Rather, the Court finds Debtor was domiciled in Maryland during the period he

resided there.  Maryland defines "domicile" as the:

> place with which an individual has a settled connection for legal purposes
> and the place where a person has his true, fixed, permanent home,
> habitation and principal establishment, without any present intention of
> removing therefrom, and to which place he has, whenever he is absent, the
> intention of returning.  The controlling factor in determining a person's
> domicile is his intent.

*Oglesby v. Williams*, 372 Md. 360, 373, 812 A.2d 1061, 1068–69 (2002) (quoting *Dorf v.*

*Skolnik*, 371 A.2d 1094, 1102–03 (Md. 1977)).  Regarding specific factors to consider,

Maryland courts have stated:

> This Court has never deemed any single circumstance conclusive.
> *However, it has viewed certain factors as more important than others, the*
> *two most important being where a person actually lives and where he votes.*
> *Where a person lives and votes at the same place such place probably will*
> *be determined to constitute his domicile.* Where these factors are not so
> clear, however, or where there are special circumstances explaining a
> particular place of abode or place of voting, the Court will look to and
> weigh a number of other factors in deciding a person's domicile.

*Oglesby*, 812 A.2d at 1068–69 (quoting *Dorf v. Skolnik*, 371 A.2d at 1102–03 (emphasis

in original)).  The place of voting has been considered by Maryland courts as the "highest

evidence of domicile."  *Blount v. Boston,* 718 A.2d 1111, 1115 (Md. 1998); s*ee also*

*Bainum v. Kalen,* 325 A.2d 392, 397 (Md. 1974) ("the two most important elements in

determining domicile are where a person actually lives and where he votes" and "[w]here

the evidence relating to voting and the evidence concerning where a person actually lives

MEMORANDUM OF DECISION − 12

both clearly point to the same jurisdiction, it is likely that such place will be deemed to constitute the individual's domicile"); *Roberts v. Lakin,* 665 A.2d 1024, 1027–28 (Md. 1995) ("Evidence that a person registered or voted is … ordinarily persuasive when the question of domicile is at issue," and actual residence, coupled with voter registration, "clearly create[s] a presumption that [the person] was domiciled" there).

In this case, Debtor testified that he and Robyn were employed in Maryland, they held Maryland driver's licenses, they registered vehicles and filed tax returns in Maryland, and most notably, they registered to vote and voted in Maryland. Accordingly, the Court determines that Debtor was domiciled in Maryland from August/September 2012–October 2017.

### b.  Relevant Statutory Period

Considering the time periods relevant to the Court's analysis, the 730-day period preceding the petition date is February 13, 2017–February 13, 2019.  Because Debtor was domiciled in both Idaho and Maryland during that time, the Court must look to Debtor's domicile during the 180 days preceding that 730-day period.  In this case, the 180-day period immediately preceding February 13, 2017 is August 16, 2016–February 12, 2017. The facts indicate Debtor was domiciled in Maryland during that entire period.  As such, the Code directs the Court to apply Maryland's exemption law to this bankruptcy case.

### c.  Maryland Exemption Law

Maryland state law includes exemptions which are specifically applicable in bankruptcy proceedings.  The Maryland statute provides:

MEMORANDUM OF DECISION − 13

In addition to the exemptions provided in subsection (b) of this section, and in other statutes of this State, in any proceeding under Title 11 of the United States Code, entitled "Bankruptcy", any individual debtor *domiciled in this State* may exempt the debtor's aggregate interest in:

    1. Personal property, up to $5,000; and

    2. Subject to subparagraph (ii) of this paragraph:

        A. Owner-occupied residential real property, including a condominium unit or a manufactured home that has been converted to real property in accordance with § 8B-201 of the Real Property Article; or

        B. A cooperative housing corporation that owns property that the debtor occupies as a residence.

    (ii) The exemption allowed under subparagraph (i)2 of this paragraph may not exceed the amount under 11 U.S.C. § 522(d)(1), adjusted in accordance with 11 U.S.C. § 104, subject to the provisions of paragraphs (2) and (3) of this subsection.

Md. Code Ann., Courts and Judicial Proceedings ("Md. Code Ann.") § 11-504(f)(1)(i) (emphasis added).  In addition, Maryland has opted-out of the federal bankruptcy exemptions.  Md. Code Ann. § 11-504(g).[4]

### d. Application

Initially, the Court notes that even though Debtor's homestead is located in Idaho, rather than Maryland, that fact does not bar the use of the Maryland homestead exemption.  *See In re Grimes*, 18 B.R. 132, 133 (Bankr. D. Md 1982).  Rather, the issue before the Court is whether, in applying Maryland exemption law, the statutory language

---

[4] Md. Code Ann., § 11-504(g) provides: "In any bankruptcy proceeding, a debtor is not entitled to the federal exemptions provided by § 522(d) of the federal Bankruptcy Code."  The Court recognizes that the domiciliary requirement is not specifically applicable to the "opt-out" provision; however, because Maryland provides exemptions that are applicable specifically in bankruptcy proceedings, including the homestead exemption, the "opt-out" provision is practically applicable only to those domiciled in Maryland.

MEMORANDUM OF DECISION − 14

limiting a homestead exemption to those debtors who are "domiciled in [that] state" requires debtors to be living in Maryland at the time they seek the exemption. This Court concludes that it does.

A Pennsylvania bankruptcy court applying Maryland exemption law addressed this issue in *Bierbach v. Brooks (In re Brooks),* 393 B.R. 80 (Bankr. M.D. Penn. 2008). That court noted that several other courts had examined the issue of whether debtors who are required to use the exemption laws of a state other than their current domicile under § 522(b)(3) are bound by provisions in the law restricting the use of the exemptions to residents or domiciliaries of the state. *Id.* It stated that "[c]ourts uniformly have found that if a state's exemptions law is restricted to debtors residing or domiciled in the state, these limitations also apply when debtors are required to use the law of their former domiciles under 11 U.S.C. § 522(b)(3)." *Id.* at 85–86 (citing *In re West,* 352 B.R. 905, 906 (Bankr. M.D. Fla. 2006) (debtor not entitled to claim Indiana exemptions because he was not an Indiana resident and exemptions were limited to residents of that state); *In re Crandall,* 346 B.R. 220, 221 (Bankr. M.D. Fla. 2006) (debtor not entitled to claim New York exemptions because she was not a New York resident and exemptions were limited to residents of that state); *In re Underwood,* 342 B.R. 358, 361 (Bankr. N.D. Fla. 2006) (debtor not entitled to claim Colorado exemptions because she was not a Colorado resident and exemptions were limited to residents of that state); *but see In re Garrett*, 435 B.R. 434 (Bankr. S.D. Tex. 2010) (specifically disagreeing with *Brooks, West, Crandall,* and *Underwood*). Idaho case law is in accord. *See In re Rodenbough*, 579 B.R. at 550–

MEMORANDUM OF DECISION − 15

51 ("Because Debtors did not reside in North Dakota at the time they filed their

bankruptcy petition, Debtors are limited to the "absolute" exemptions [accessible by

nonresidents] in N.D. Cent. Code § 28–22–02"); *In re Katseanes*, 07.4 I.B.C.R. 79, 79–

80 (Bankr. D. Idaho 2007) (Utah statute limits homestead exemption to property located

within that state, so Idaho debtors were not entitled to claim a Utah homestead exemption

in Idaho property.)

In so holding, the *Brooks* court noted that Congress contemplated this situation

when it drafted the "hanging paragraph" in § 522(b)(3)(C), which provides that if "the

effect of the domiciliary requirement under subparagraph (A) is to render the debtor

ineligible for any exemption, the debtor may elect to exempt property that is specified

under subsection (d)."  393 B.R. at 86.  The *Brooks* court held that the "hanging

paragraph" only permits a debtor to use the federal exemptions in situations where the

debtor would otherwise be prohibited from claiming *any* exemptions.  *Id.*  This Court has

held likewise.  *See In re Rodenbough*, 579 B.R. at 551; *In re Wilson*, 2015 WL 1850919,

at *4 (Bankr. D. Idaho, Jan. 13, 2015) ("[s]o long as debtors can receive some

exemptions under the applicable state law, there is no reason for recourse to § 522(d)

federal exemptions as a fallback under § 522(b)(3)'s hanging paragraph."); *In re

Katseanes,* 07.4 I.B.C.R. at 79–80 ("the Utah exemption statutes are applicable in

Debtors' case, even if they do not benefit from all of the various exemptions provided

under that State's laws.").  In the case at bar, as in *Brooks*, Debtor has exemptions

available to him, despite the limitation of § 11-504(f) to persons domiciled in Maryland,

MEMORANDUM OF DECISION − 16

because the remainder of the exemption scheme is available to persons domiciled outside

the state.[5]  As such, this Court holds that Debtor must utilize Maryland exemptions.[6]

That state's exemption scheme provides for certain exemptions which Debtor may claim,

but the homestead exemption is limited to those domiciled in Maryland at the time the

exemption is claimed.  As Debtor is now domiciled in Idaho, he is not entitled to claim a

homestead exemption.[7]  Accordingly, Trustee's objection to Debtor's claim of an

exemption in the 14th Street property will be sustained.

## B.  Reduction of Homestead under § 522(o)

Despite holding that Debtor is not entitled to a homestead exemption under

Maryland, Idaho, or federal law, the Court will briefly consider Trustee's initial objection

---

[5]  Maryland law provides for exemptions, without domiciliary restriction, in wearing apparel, books, tools, instruments, or appliances; money payable in the event of sickness, accident, injury, or death of any person, including compensation for loss of future earnings; professionally prescribed health aids for the debtor or any dependent of the debtor; household furnishings, household goods, wearing apparel, appliances, books, animals kept as pets, and other items that are held primarily for the personal, family, or household use of the debtor or any dependent of the debtor; certain cash or property; money payable or paid in accordance with an agreement or court order for child support or alimony; and certain trust property.  Md. Code Ann. § 11-504(b).

[6]  In so holding, the Court is mindful of the cases which hold that debtors who must use exemptions from another state may utilize the federal exemptions if the opt-out statute of that state is limited to domiciles or residents.  *See, e.g. Camp v. Ingalls (In re Camp)*, 631 F.3d 757, 760 (5th Cir. 2011) (applying federal exemptions because Florida's opt-out scheme is limited to "residents of this state"); *In re Rody*, 468 B.R. 384, 390-91 (Bankr. D. Ariz. 2012) (same, applying Arizona's opt-out provision).  Unfortunately for Debtor here, the Maryland opt-out statute does not have a domiciliary limitation, simply providing, "[i]n any bankruptcy proceeding, a debtor is not entitled to the federal exemptions provided by § 522(d) of the federal Bankruptcy Code." Md. Code Ann. § 11-504(g).  Thus, it would appear that all debtors, regardless of domicile, would not be permitted to choose the federal exemptions under Maryland law.

[7]  The Court notes that, even if Debtor were entitled to a homestead exemption, under Maryland statute, the exemption would be capped at the amount of the federal homestead exemption under § 522(d)(1), which is currently $23,675.

MEMORANDUM OF DECISION – 17

to Debtor's homestead exemption claim, alleging that § 522(o) operates to reduce any

homestead exemption to which Debtor may be entitled.  Section 522(o) provides for

reduction of a state law homestead exemption to the extent of any value attributable to

nonexempt property disposed of by the debtor within ten years of filing with intent to

hinder, delay or defraud a creditor.  It was enacted as part of the 2005 amendments to the

Bankruptcy Code, and was an attempt to limit pre-bankruptcy exemption planning.

In order to prevail under § 522(o), Trustee must establish:

> (1) the value of the debtor's homestead exemption increased; (2) the
> increase can be attributed to debtor's disposition of nonexempt assets; (3)
> the debtor disposed of the nonexempt assets with the intent to hinder, delay,
> or defraud a creditor; and (4) the debtor disposed of the nonexempt
> property no more than ten years before the bankruptcy petition was filed.

*In re Halinga*, No. 13-00925-TLM, 2013 WL 6199152, at *4 (Bankr. D. Idaho Nov. 27,

2013) (citing *In re Stanton,* 457 B.R. 80, 91 (Bankr. D. Nev. 2011)).

In this case, Trustee contends that Debtor obtained unsecured loans in the form of

approximately $69,000 worth of balance transfers from his credit cards and used them to

pay for the construction of the home and outbuilding on the 14th Street property.  He

contends this implicates § 522(o), alleging that the transfers were done with the intent to

hinder, delay, or defraud creditors.

While it is likely the other elements are satisfied, the Court finds no proof of intent

to hinder, delay or defraud.  This Court in *Halinga* observed that a "plain reading of the

statutory language reveals that 'hinder, delay, or defraud' is stated in the disjunctive, so

intent to hinder or delay is sufficient." *Halinga*, 2013 WL 6199152, at *5; (citing

MEMORANDUM OF DECISION − 18

§ 522(o); *Bernard v. Sheaffer (In re Bernard),* 96 F.3d 1279, 1281 (9th Cir. 1996)

(discussing § 727(a)(2))).  This Court further noted that the requisite intent may be

inferred from the facts and circumstances of a case, because it is unlikely a debtor will

testify directly that his intent was fraudulent.  *Halinga*, 2013 WL 6199152, at *5

(citing *First Beverly Bank v. Adeeb (In re Adeeb),* 787 F.2d 1339, 1343 (9th Cir. 1986)).

To decide whether an inference of fraudulent intent was present, the Court may look for

the so-called "badges of fraud."  *Halinga,* 2013 WL 6199152, at *5 (citing *In re

Craig,* 2012 WL 6645692, at *4–5 (Bankr. D. Mont. Dec. 20, 2012)).  Courts may use

badges of fraud not only to show the intent to defraud, but also to show the intent to

hinder or the intent to delay.  *Stanton,* 457 B.R. at 93.

These badges include: 1) a close relationship between the transferor and the

transferee; 2) that the transfer was in anticipation of a pending suit; 3) that the transferor

Debtor was insolvent or in poor financial condition at the time; 4) that all or substantially

all of the Debtor's property was transferred; 5) that the transfer so completely depleted

the Debtor's assets that the creditor has been hindered or delayed in recovering any part

of the judgment; and 6) that the Debtor received inadequate consideration for the transfer.

*Halinga*, 2013 WL 6199152, at *5–6 (citing *Retz v. Samson (In re Retz),* 606 F.3d 1189,

1200 (9th Cir. 2010) (citing *Emmett Valley Assocs. v. Woodfield (In re Woodfield),* 978

F.2d 516, 518 (9th Cir. 1992))).

In considering the case before it, the evidence presented does not support a finding

that Debtor utilized the balance transfers from his credit cards with the intent to hinder,

MEMORANDUM OF DECISION − 19

delay or defraud his Debtor's creditors.  Rather, the evidence showed that Debtor made

conscious choices to use the balance transfers to pay off the subcontractors as their debts

became due, as well as to pay Mtn. America, but had a plan in mind to pay off those

advances using a home equity line of credit.  Moreover, the evidence showed that Debtor

was not contemplating a bankruptcy filing at the time he executed the balance transfers,

and only made the decision when he learned he could not access the line of credit, and

realized he could not service the debt.

Accordingly, had the Court found that Debtor was entitled to an exemption in his

homestead, the exempt portion would not be subject to reduction under § 522(o), and

Trustee's objection to Debtor's claim of exemption will be overruled on this basis.

### Conclusion

Because Debtor must utilize Maryland exemptions according to § 522(b)(3)(A),

and because Maryland's exemption scheme limits the homestead exemption to debtors

who are domiciled in that state, Debtor is not entitled to claim a homestead exemption

under Maryland law.  Moreover, because Debtor may exempt other property according to

the Maryland exemption scheme, Debtor may not utilize the federal exemptions.

Therefore, Trustee's objection to Debtor's claim of exemption is sustained.

On the other hand, because the facts revealed no indicia of fraud under § 522(o),

had Debtor been entitled to a homestead exemption, it would not be subject to reduction.

MEMORANDUM OF DECISION − 20

Accordingly, Trustee's objection to Debtor's claim of exemption on the basis of § 522(o)

is overruled.

A separate order will be entered.



DATED:  February 20, 2020

JOSEPH M. MEIER
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION − 21